1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ALEXANDER STEIN,

                                    Plaintiff(s),

        v.

CITY OF LAS VEGAS, et al.,

                                    Defendant(s).

Case No.2:23-CV-355  JCM (BNW)

ORDER

Presently before the court is plaintiff Alexander Stein ("Stein")'s motion for partial summary judgment.  (ECF No. 13).  Defendants City of Las Vegas, Carolyn Goodman ("Mayor Goodman"), and Michele Fiore ("Fiore") (collectively, "defendants") filed a response (ECF No. 17), to which Stein replied (ECF No. 19).[1]

Also before the court is defendants' motion for summary judgment.  (ECF No. 15).  Stein filed a response (ECF No. 18), to which defendants replied (ECF No. 20).

**I.      Background**

This case arises from a disruption at a Las Vegas City Council meeting.  Stein, a Texas resident, traveled to Las Vegas and attended a City Council meeting on August 17, 2022.  (ECF No. 7 at 3).  The complaint provides that Stein frequently speaks at municipal meetings and is known for using "humor to bring attention to serious social and political issues."  (*Id.*).

_____

[1] Stein moves for summary judgment against Fiore only, but all defendants responded to his motion.  (*See* ECF No. 17).  This procedural discrepancy does not affect the court's ultimate ruling and disposition.

Stein alleges that he planned to bring attention to the exploitative practices of Las Vegas casinos and that he incorporated a humorous anecdote while speaking to City Council members. (*Id.* at 4).  Before Stein's allotted time had expired, Mayor Goodman interrupted Stein, whose microphone was subsequently cut off.  (*Id.*).  Fiore then ordered the marshals to remove Stein from chambers.  (*Id.*).

According to Stein, Fiore violated City Council procedure by ejecting him, specifically because she did not consult with Mayor Goodman regarding the issue and the City Council did not hold a vote regarding Stein's ejection.  (*Id.*).  Most pertinent to this case, Stein claims that Fiore ordered his objection due to the content of his speech.  (*Id.*).

Stein now brings four claims against defendants: (1) a violation of his First Amendment right to freedom of speech; (2) a violation of his Fifth Amendment right to due process; (3) a violation of his Fourteenth Amendment right to equal protection; and (4) a violation of the Nevada Constitution's liberty of speech clause.  (*Id.* at 5-7).

Both parties have moved for summary judgment on all claims.  Because the court finds that (1) Stein did not identify any federal actors on his Fifth Amendment due process claim, (2) Stein's removal from the meeting did not violate the First Amendment because it was not based on viewpoint discrimination, and (3) Stein was not treated differently from similar individuals as prescribed by the Fourteenth Amendment, the court denies Stein's motion for partial summary judgment and grants defendants' motion for summary judgment.

## II.    **Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp*., 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

1   *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

2   opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

3   that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4   versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

5   630 (9th Cir. 1987).

6

7          In other words, the nonmoving party cannot avoid summary judgment by relying solely on

8   conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

9   1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

10  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

11  for trial.  *See Celotex Corp.*, 477 U.S. at 324.

12

13         At summary judgment, a court's function is not to weigh the evidence and determine the

14  truth, but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*,

15  *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

16  justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

17  nonmoving party is merely colorable or is not significantly probative, summary judgment may be

18  granted.  *See id.* at 249–50.

19

20         The Ninth Circuit has held that information contained in an inadmissible form may still be

21  considered for summary judgment if the information itself would be admissible at trial.  *Fraser v.*

22  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

23  418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to

24  produce evidence in a form that would be admissible at trial, as long as the party satisfies the

25  requirements of Federal Rule of Civil Procedure 56.").

26  . . .

27

28

**III.    Discussion**

As a preliminary matter, the court grants defendants' motion for summary judgment on Stein's claim for due process violations under the Fifth Amendment.

"The Due Process Clause of the Fifth Amendment and the equal protection component thereof *apply only to actions of the federal government*—not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)) (emphasis added).

The court recently issued an order adopting Judge Brenda Weksler's report and recommendation that Stein's motion to amend his complaint be denied.  (ECF No. 26).  In his motion, Stein argued that his pleading contained a typographical error, as his second claim was meant to denote "as secured by the Fourteenth Amendment" instead of "as secured by the Fifth Amendment."  (ECF No. 24 at 1).

Stein never alleges that any of the defendants were federal actors, and based on the court's prior ruling, he cannot amend his complaint to do so now.  It is undisputed that these events took place at a City Council meeting in which Mayor Goodman and Fiore were municipal actors participating on behalf of the City of Las Vegas.  (*See* ECF No. 7 at 3).  No federal entity was ever involved.  The court grants defendants' motion for summary judgment on Stein's Fifth Amendment claim and conversely denies Stein's motion for partial summary judgment on this claim.

A.  First Amendment and liberty of speech claims

The parties move for summary judgment on Stein's claims for violations of his First Amendment right to freedom of speech under the United States Constitution and his right to liberty of speech under the Nevada Constitution.  The court can analyze these claims under the same framework, as Nevada's liberty of speech clause affords no greater protection to speech activity

- 5 -

1
2

than does the First Amendment to the United States Constitution.  *See S.O.C., Inc. v. Mirage Casino-Hotel*, 23 P.3d 243, 251 (Nev. 2001).

3
4
5
6
7
8

Courts analyze speech restrictions imposed by the government on property that it owns under a "forum-based" approach.  *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).  The three categories of forums are (1) traditional public forums, (2) designated public forums, and (3) limited public forums.  *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983).

9
10
11
12

For purposes of brevity, the court will analyze the actual conduct that occurred, the laws governing city council meetings, and case law interpreting permitted and prohibited speech in limited public forums.

13

> i.      *Restrictions on speech at city council meetings*

14
15
16
17
18

Nevada law allows for the ejection of a speaker from a public meeting if he "willfully disrupts a meeting to the extent that its orderly conduct is made impractical."  NRS 241.030(4)(a).  Additionally, the City Council Code of Conduct provides that any member of the City Council has a duty to "[m]aintain order during the City Council meetings."  ECF No. 20-2 at 4.

19
20
21
22

Although the question of whether a person's actions are disruptive appears inherently subjective on the surface, Stein's conduct, combined with the totality of the circumstances, was in violation of both Nevada law and the City Council Code of Conduct.

23
24
25
26
27
28

Defendants points to Stein's language as disruptive.  Stein stated the following before his microphone was muted: "I end up meeting a nice Filipino girl.  I take her back to my hotel room . . . I ended up having a good time.  We started kissing.  We take off our clothes.  She has male genitalia.  She's a transgender."  ECF No. 15-3 at 4.  Subsequently, Mayor Goodman interrupted Stein and reminded him "[w]e're in a public venue" and asked if he could remain calm.  (*Id.*).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stein continued speaking despite Mayor Goodman asking him to be "calm" on multiple occasions.  (See *id.* at 4-5).  Stein's speech then edged on ludicrousness, as he suggested the installation of a tracking device on transgender individuals "so if you sleep with a prostitute [,] you know if it's a male, or a boy, or a girl."  (*Id.* at 5).

A speaker's actions are deemed disruptive during a city council meeting if he speaks too long, is unduly repetitive, or extends discussions of irrelevancies.  *See White v. City of Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990).  "Impertinent" or "profane" language is disruptive of a city council meeting's agenda.  *Id.* at 1426 n.6.  The Ninth Circuit has held that "foul language can be disruptive."  *Felton v. Griffin*, 185 F. App'x 700, 702 (9th Cir. 2006).

Stein's conduct, taken as a whole, was disruptive and warranted removal.  Mayor Goodman repeatedly issued warnings to Stein and even asked him to calm down.  The video depicts Stein's aggressive and loud tone, who instead of adhering to Mayor Goodman's reasonable instructions chose to yell at members of the City Council.  *See generally* ECF No. 15-4.  Stein himself alleges that he planned to bring attention to the exploitative practices of Las Vegas casinos.  (ECF No. 7 at 4).  However, his detailed and graphic explanation of a sexual encounter bore no correlation to his stated objective.

The court also rejects Stein's argument that he was not raising his voice any more than necessary.  ECF No. 18 at 4.  After Stein's microphone was muted, he shouted the explicit phrase "chick with a dick" multiple times in the direction of the City Council.  ECF No. 15-4 at 3:30. Stein thus willfully disrupted a meeting to the extent that its orderly conduct was made impractical. *See* NRS 241.030(4)(a).  Finally, Fiore did not need permission from Mayor Goodman, who did not voice her opposition to the ejection, to remove Stein under the City Council Code of Conduct. *See* ECF No. 20-2 at 4.

ii.     *Viewpoint discrimination*

Stein alleges that viewpoint discrimination occurred because Fiore found his speech offensive and was familiar with his conduct at meetings in other localities.  ECF No. 18 at 13.

A city council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech—as long as content-based regulations are viewpoint neutral and enforced as such.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). Viewpoint discrimination, which is prohibited in limited public forums, exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).  When analyzing viewpoint discrimination, a court must decide whether the government is regulating speech because it disapproves of the ideas expressed.  *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188 (2007).

Defendants aptly posit that although there is no dispute that the speech occurred in a limited public forum, their refusal to indulge Stein's comments was permissible content discrimination, as stopping him from describing a graphic sexual encounter preserved the purpose of that forum. (ECF No. 20 at 4).  The Supreme Court has supported this form of content discrimination.  *See Perry Educ. Ass'n*, 460 U.S. at 46 (holding that "content discrimination . . . may be permissible if it preserves the purposes of that limited forum.").

Contrary to Stein's assertions, there is no evidence that Fiore asked for Stein to leave the meeting because of his views on transgender individuals.  Although Fiore stated in her deposition that she takes offense to "transgender issues," this does not mean that the genesis of her decision to remove Stein was because of any political sensitivities or motives.  (*See* ECF No. 17 at 7). Nowhere in Fiore's deposition does she state she based her decision to remove Stein because she

was offended by his viewpoint.

Accordingly, the court finds the City Council's ejection of Stein did not constitute a violation of his First Amendment freedom of speech and Nevada liberty of speech claims. The court grants defendants' motion for summary judgment as to these claims and conversely denies Stein's motion for partial summary judgment as to these claims.

B. Equal protection claim

The parties move for summary judgment on Stein's claim for violation of his Fourteenth Amendment right to equal protection. An equal protection claim requires a plaintiff to allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The court summarily rejects Stein argument regarding the merits of this claim. Stein avers that "it is undisputed that [he] was singled out for special treatment when compared to the other two speakers who were similarly situated" and "there [was] no discernable difference between Stein and the other two speakers." (ECF No. 13 at 23).

The exhibits directly contradict Stein's position. No other speaker at the meeting used a confrontational tone and, more importantly, spoke about a sexually explicit topic. Daniel Braisted, the first speaker, recounted a personal experience that occurred two weeks prior to the meeting when he was shot with a water pistol. (*Id.* at 7). Susan Wade, the second speaker, spoke about her financial hardships and how she had been living in her car for the past eight months. (*Id.* at 7-8).

Simply put, there is no way to equate the first two speakers to Stein, as they did not create a disturbance and thus were not similarly situated to him. The court grants defendants' motion for

summary judgment as to Stein's Fourteenth Amendment equal protection claim and conversely denies Stein's motion for partial summary judgment as to this claim.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Alexander Stein's motion for partial summary judgment (ECF No. 13) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants City of Las Vegas, Carolyn Goodman, and Michele Fiore's motion for summary judgment (ECF No. 15) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment on behalf of defendants and close this case.

DATED June 17, 2024.

_____
UNITED STATES DISTRICT JUDGE